# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL MARTIN,<br><br>            Plaintiff,<br><br>    v.<br><br>W. J. SULLIVAN, et al.,<br><br>            Defendants.<br>_____/ | CASE NO. 1:06-cv-00972-OWW-NEW (DLB) PC<br><br>ORDER REQUIRING PLAINTIFF TO EITHER FILE A SECOND AMENDED COMPLAINT OR NOTIFY THE COURT OF HIS WILLINGNESS TO PROCEED ONLY ON HIS EXCESSIVE FORCE AND RETALIATION CLAIMS<br><br>(Doc. 18) |

I.    Screening Order

   A.    Screening Requirement

Plaintiff Russell Martin ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on June 23, 2006, and on February 27, 2007, plaintiff's complaint was dismissed, with leave to amend, for failure to state any claims upon which relief may be granted. Plaintiff filed an amended complaint on March 26, 2007.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Id. at 514. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

B.  Plaintiff's Claims

Plaintiff is an inmate currently housed at Salinas Valley State Prison. The events at issue in this action allegedly occurred while plaintiff was housed at the California Correctional Institution ("CCI") in Tehachapi. Correctional Officers Uzzle, Shiefelbien, and Bryant, Sergeants Cribb, Slankard, and Alipaz, and Does 1-5 are named as defendants. Plaintiff is seeking money damages and injunctive relief. Plaintiff alleges that defendants' actions give rise to claims for relief under section 1983 for use of excessive force and for failure to protect

plaintiff, in violation of the Eighth Amendment, and for retaliation, in violation of the First Amendment.

Plaintiff alleges that on August 28, 2005, he was awakened and he submitted to being placed in handcuffs. Plaintiff alleges that after he walked to the back of his cell and faced the wall, in anticipation of the return of his cellmate from a disciplinary hearing, defendants Uzzle and Shiefelbien rushed into the cell, grabbed plaintiff's shirt, arm, and head, and slammed plaintiff's head and body into the concrete wall, causing a knot to form on the left side of plaintiff's head. Plaintiff alleges that he later learned defendants had come to the cell to confiscate his cellmate's television on the order of the disciplinary hearing officer. Plaintiff filed an inmate appeal grieving the incident on August 29, 2005.

Plaintiff alleges that on August 31, 2005, he was supposed to attend yard once he removed his braids, as he had been instructed to do. Plaintiff alleges that he was placed in a holding cage and when he asked why, defendant Slankard told him he had refused yard. Plaintiff alleges that when he said that was incorrect and that he had to first remove his braids, which he did as instructed, defendant Slankard accused him of making false allegations against officers and told him that this was their prison and they could do whatever they wanted to, including beating, pepper spraying, and hog tying plaintiff and there was nothing he could do about it. Plaintiff alleges that he remained silent and was returned to his cell approximately thirty-five minutes later. Plaintiff alleges that his cell had been searched and his property had been strewn all over and some property, including photographs and legal documents, had been torn up. Plaintiff alleges that on October 10, 2005, he filed an inmate appeal grieving the harassment and destruction of his property.

Plaintiff alleges that on October 2, 2005, he and his cellmate were taken to a holding cage by three Doe defendants so that defendant Cribb could interview him about the inmate appeal he filed grieving the conduct of defendants Uzzle and Shiefelbien. Plaintiff alleges that defendant Cribb filed a false report containing inaccurate and untrue information and/or destroyed valuable, relevant evidence. Plaintiff alleges that he pursued his grievance to the Director's Level of review, where defendant Cribb's review was found to be deficient and the matter was referred

back to CCI for re-investigation.  Plaintiff alleges that CCI has ignored the Director's Level review mandate and has not re-investigated the matter.

Plaintiff alleges that on October 2, when he and his cellmate were removed from their cell to be interviewed by defendant Cribb, their cell was searched by Doe defendants.  Plaintiff alleges that he became suspicious due to the manner the search was being conducted in, the lack of visibility of the officers' names, and the officers' refusal to tell him their names.  Plaintiff alleges he contacted Lieutenant Fortson via an inmate request for interview form.

Plaintiff alleges that on October 4, 2005, he and his cellmate found two razor blades on top of the lockers when they were cleaning their cell.  Plaintiff alleges that he asked Officer Dean to contact Lt. Fortson and tell him that they needed to speak with him and it was an emergency.  Plaintiff alleges that he was told Lt. Fortson said to put the request in writing in an inmate request for interview form.  Plaintiff alleges he notified Lt. Fortson about the razor blades in writing and told him that if he did not respond to plaintiff's request, plaintiff would turn the razor blades in to the Facility Lieutenant on October 6, 2005.

Plaintiff alleges that on October 6, 2005, he asked housing officers to contact Lieutenant Nelson and tell him that plaintiff wanted to speak to him, but although Nelson said he would respond, he never showed up.  Plaintiff alleges that on October 7, 2007, defendant Cribb and Noyce[1] approached his cell and told him to cuff up so they could search it.  Plaintiff alleges that he knew what they were after and refused.  Defendant Cribb and Noyce left and then returned with Lt. Nelson, who asked plaintiff for the razor blades and told plaintiff he had been contacted by Lt. Fortson.  Plaintiff alleges that he was unable to locate the razor blades because his cellmate, who was out for yard, had moved them.  Plaintiff alleges that the cell was searched and defendant Cribb and Noyce found the razor blades.  Plaintiff and his cellmate were issued Rules Violations Reports ("RVR") for possession of a weapon.  Plaintiff was subsequently found guilty, and assessed a credit forfeiture of three-hundred sixty days and an additional ten months in the Security Housing Unit.

---

[1] Noyce is not a defendant.

4

1   Plaintiff alleges that he appealed the issuance of the RVR and his appeal was partially
2   granted at the Director's Level of review in September of 2006. Plaintiff alleges that CCI was
3   directed to reissue and rehear the RVR, and either reduce the charge to dangerous contraband or
4   dismiss the charge. Plaintiff alleges that CCI has ignored the directive.

5   Plaintiff alleges that on November 14, 2005, he informed a building sergeant that he was
6   not getting along with his cellmate and they needed to be separated. When the sergeant did not
7   return, plaintiff packed his property and when third watch officers came to his cell, he told them
8   he and his cellmate needed to be separated immediately and he was not going back into the cell.
9   Plaintiff was subsequently taken to a holding cell where he spoke with defendant Alipaz and told
10  him that he needed to have his own cell due to a medical condition which caused him to pass bad
11  gas all day long. Plaintiff alleges he told defendant Alipaz that if any inmate was willing to live
12  with him after hearing about his condition, he would accept that inmate as a cellmate. Plaintiff
13  alleges that defendant Alipaz got angry and ordered the confiscation of plaintiff's property.
14  Plaintiff alleges his TV was confiscated as punishment and he was placed in a cell without any of
15  his allowable property. Plaintiff alleges that he spoke with defendant Bryant, who told him that
16  he was not getting any of his property. Plaintiff alleges that when the black inmates heard this
17  statement, they agreed to cover up their windows in order to get a captain or an associate warden
18  to the building.

19  Plaintiff subsequently agreed to remove the covering from his window and Sergeant
20  Given agreed to speak with the captain the next day to get plaintiff's property back. The other
21  inmates also uncovered their windows and plaintiff was placed in a holding cell approximately
22  ten minutes later after defendant Bryant told him that the watch commander wanted to speak with
23  him. Once in the holding cage, defendant Bryant ordered plaintiff to take off all his clothes in
24  front of ten to fifteen officers of both genders or get pepper sprayed. Plaintiff alleges that when
25  he refused to disrobe in front of female officers, he was removed from the holding cage and
26  stripped naked in front of female officers on defendant Bryant's orders.

27  Plaintiff alleges he was examined by a female medical technical assistant, the linens were
28  taken out of his cell, and he was walked up the stairs naked and placed back in his cell. Plaintiff

5

alleges that he was held in a filthy isolation cell for three days, was provided with one pair of paper underwear, and had no mattress, sheets, blanket, towel, soap, or toilet paper. Plaintiff alleges that he had to sleep on the steel bunk or the floor and was without his blood pressure medication for three days because it was with his confiscated property.

        1.     Excessive Force Claim

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

///

1    Plaintiff's allegations give rise to a cognizable claim for relief under section 1983 against
2 defendants Uzzle and Shiefelbien for use of excessive force, in violation of the Eighth
3 Amendment. Fed. R. Civ. P. 8(a).

### 2. Failure to Protect

Plaintiff alleges failure-to-protect claims arising from the incident of excessive force, and the incident in which plaintiff was stripped naked in front of ten to fifteen officers and placed in an isolation cell.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45. Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. Id. at 844-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Id. at 835; Frost, 152 F.3d at 1128.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. at 8 (quotations and citations omitted). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Id. at 9 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotations and citations omitted).

The incident of alleged excessive physical force gives rise to a cognizable excessive force claim, as set forth in the preceding subsection. However, the incident does not support a separate Eighth Amendment claim under the theory that defendants Uzzle and Shiefelbien knew of and disregarded an excessive risk to plaintiff's safety. Accordingly, the incident of excessive force does not give rise to a cognizable failure to protect claim.

The allegation that defendant Bryant forced plaintiff to strip naked in front of ten to fifteen officers, including female officers, by threatening to pepper spray him if he did not comply does not state a claim under the Eighth Amendment. Threats do not rise to the level of a constitutional violation, Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987), and the facts alleged do not support a claim that defendant Bryant knew of and disregarded an excessive risk to plaintiff's safety. Plaintiff therefore fails to state a failure to protect claim against defendant Bryant.

Finally, plaintiff alleges that after being stripped naked, he was held in a filthy isolation cell for three days. Plaintiff alleges that he was provided with one pair of paper underwear and had no mattress, sheets, blanket, towel, soap, or toilet paper. Plaintiff alleges that he had to sleep on the steel bunk or the floor and was without his blood pressure medication for three days because it was with his confiscated property. These allegations, alone, are not sufficient to rise to the level of an Eighth Amendment violation. The deprivations complained of must be extreme, and the factual allegations must be sufficient to support a claim that one or more of the named

defendants knew of and disregarded an excessive risk to plaintiff's health or safety. That the conditions complained of may have been harsh or uncomfortable is insufficient to rise to the level of an Eighth Amendment violation, and plaintiff has not linked any of the defendants to the conditions complained of in the cell.

Plaintiff set forth his allegations in a long narrative and then listed his legal claims at the end of his complaint. Due to the number of incidents described by plaintiff, some of which are clearly just background facts, the court is not entirely certain it has covered all of plaintiff's Eighth Amendment legal claims. Plaintiff will be provided with one final opportunity to amend, if he wishes to do so. If there are additional claims plaintiff intended to pursue but which were not addressed by the court, it is plaintiff's responsibility to clearly identify those claims in his amended complaint.

### 3. Retaliation

Plaintiff alleges that the actions taken by defendants, as set forth in his amended complaint, were in retaliation for the inmate appeals he filed grieving staff misconduct. Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

The incident of excessive force on August 28, 2005, does not give rise to a cognizable retaliation claim because the protected First Amendment conduct allegedly occurred after the

///

incident, when plaintiff filed an inmate appeal grieving the incident. It is the filing of this first grievance that allegedly set into motion the other events in the complaint.

First, to state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). Second, to state a claim for retaliation, the adverse action complained of must be one that "would chill a person of ordinary firmness" from engaging in that activity. Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000); see also Lewis v. Jacks, 486 F.3d 1025, 1028 (8th Cir. 2007); see also Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Bennett v. Hendrix, 423 F.3d 1247, 1250-51 (11th Cir. 2005); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Filing inmate grievances are protected activities and it is impermissible for prison officials to retaliate against inmates for engaging in theses activities. However, not every allegedly adverse action will be sufficient to support a claim under section 1983 for retaliation. In the prison context, cases in this Circuit addressing First Amendment retaliation claims involve situations where the action taken by the defendant was clearly adverse to the plaintiff. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005) (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) (retaliatory placement in administrative segregation for filing grievances); Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003) (retaliatory validation as a gang member for filing grievances); Hines v. Gomez, 108 F.3d 265, 267(9th Cir. 1997) (retaliatory issuance of false rules violation and subsequent finding of guilt); Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (retaliatory prison transfer and double-cell status in retaliation); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989) (inmate labeled him a snitch and approached by other inmates and threatened with harm as a result); Rizzo v. Dawson, 778 F.2d 527, 530-32 (9th Cir. 1985) (retaliatory reassignment out of vocational class and transfer to a different prison).

1  The allegation that defendant Slankard threatened plaintiff is insufficient to support a
2  claim under section 1983, as threats do not rise to the level of a constitutional violation. Gaut,
3  810 F.2d 923 at 925. The allegation that defendant Cribb falsified a report and/or destroyed
4  evidence is also insufficient to support a claim. The court cannot discern from plaintiff's
5  allegations significance of the report or the evidence or how defendant Cribb's actions adversely
6  affected plaintiff. However, the allegations that Doe defendants and defendant Cribb were
7  involved in the incident in which razor blades were planted and then discovered, leading to the
8  issuance of a rules violation report for possession of a weapon are sufficient to give rise to a
9  claim for relief.[2] Finally, plaintiff has not alleged any facts linking adverse action taken by
10 defendants Alipaz and Bryant to his exercise of an activity protected by the First Amendment.

### 4. Claim For Injunctive Relief

12 Plaintiff seeks injunctive relief in his amended complaint. "[T]hose who seek to invoke
13 the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III
14 of the Constitution by alleging an actual case or controversy." City of Los Angeles v. Lyons, 461
15 U.S. 95, 101, 103 S.Ct. 1660, 1665 (1983) (citations omitted); Jones v. City of Los Angeles, 444
16 F.3d 1118, 1126 (9th Cir. 2006). "Abstract injury is not enough." Lyons, 461 U.S. at 101, 103
17 S.Ct. at 1665. "[P]laintiff must show that he has sustained or is immediately in danger of
18 sustaining some direct injury as the result of the challenged official conduct and the injury or
19 threat of injury must be both real and immediate, not conjectural or hypothetical." Id. (internal
20 quotations and citations omitted). "The key issue is whether the plaintiff is 'likely to suffer
21 future injury.'" Jones, 444 F.3d at 1126 (quoting Lyons at 105, 1667). When a government
22 agency is involved, it must "be granted 'the widest latitude in the dispatch of its own internal
23 affairs,'" Gomez v. Vernon, 255 F.3d 1118, 1128 (9th Cir. 2001) (quoting Rizzo v. Goode, 423

---

[2] Plaintiff alleges he lost time credits as a result of being convicted of the RVR. The loss of time credits serves to bar plaintiff's claim under section 1983 arising from this incident because the length of plaintiff's sentence is affected and his sole remedy lies in habeas. Wilkinson v. Dotson, 544 U.S. 74, 81-2, 125 S.Ct. 1242, 1248 (2005). However, plaintiff alleges that his appeal of the RVR was granted and prison officials were ordered to reissue and rehear the RVR. It is not clear from the complaint whether the credit forfeiture is still in place or not. If the credit forfeiture stands, plaintiff's claim arising from the planting of the razor blades is barred. Id. If the result of the disciplinary hearing has been invalidated and the credits have been restored, plaintiff's retaliation claim is not barred. Id.

11

U.S. 362, 378-79, 96 S.Ct. 598, 608 (1976)), and "[w]hen a state agency is involved, these considerations are, in anything, strengthened because of federalism concerns," Gomez, 255 F.3d at 1128. "[A]ny injunctive relief awarded must avoid unnecessary disruption to the state agency's 'normal course of proceeding.'" Id. at 1128 (quoting O'Shea v. Littleton, 414 U.S. 488, 501, 94 S.Ct. 669, 679 (1974)).

In addition, any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part, "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

Equitable remedies are "unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again - a 'likelihood of substantial and immediate irreparable injury.'" Lyons at 111, 1670 (quoting O'Shea, 414 U.S. at 502, 94 S.Ct. at 679). The events at issue in this action allegedly occurred at CCI in 2005 and 2006. Plaintiff is currently housed at California State Prison-Calipatria. Because plaintiff's claims arise from past events at prison where he is no longer housed, there are no grounds entitling plaintiff to seek equitable relief in this action. Accordingly, this action should proceed as one for money damages only.

C. Conclusion

Plaintiff's amended complaint states cognizable claims for relief under section 1983 against defendants Uzzle and Shiefelbien for use of excessive physical force in violation of the Eighth Amendment, and against defendants Cribb and Does for retaliation in violation of the First Amendment. However, plaintiff's amended complaint does not state any other claims under section 1983. The court will provide plaintiff with one final opportunity to file a second amended complaint, if plaintiff wishes to do so.

///

If plaintiff does not wish to file a second amended complaint and is agreeable to proceeding only against defendants Uzzle and Shiefelbien for use of excessive physical force and defendants Cribb and Does for retaliation, plaintiff may so notify the court in writing, and the court will issue a Findings and Recommendations recommending that the remaining defendants and claims be dismissed from this action, and will forward plaintiff three summonses and three USM-285 forms for completion and return.[3]  Upon receipt of the forms, the court will direct the United States Marshal to initiate service of process.

In the event that plaintiff does wish to file a second amended complaint, plaintiff is advised that an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220.  Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send plaintiff a civil rights complaint form;
2. Within **thirty (30) days** from the date of service of this order, plaintiff must either:

///

---

[3] Service of process cannot be initiated on Doe defendants.  Once plaintiff ascertains their identities, he will be provided with summonses and USM-285 forms.

      a.    File a second amended complaint curing the deficiencies identified by the court in this order, or

      b.    Notify the court in writing that he does not wish to file a second amended complaint and wishes to proceed only against defendants Uzzle and Shiefelbien for use of excessive physical force and defendants Cribb and Does for retaliation; and

3.    If plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated: __**August 27, 2007**__             _____**/s/ Dennis L. Beck**_____
                                                        UNITED STATES MAGISTRATE JUDGE